UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARDEEP KUMAR and VICTOR MALLH, on their own behalf and for all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　– against –<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX CORPORATION, CREDIT TO GET IT INC., TAMEKA Y. JONES also known as TAMEKA JONES NEVILLE, QUICKSILVER PARCEL SERVICE INC., JOHN M. JEANMARIE, TWO FAR GLOBAL INC., HOLGER FARIAS, and JOHN DOES 1–10,<br><br>　　　　　Defendants. | Case No. 14 CV 4274<br><br><br>COMPLAINT<br><br><br>Jury Trial Demanded |

Plaintiffs VICTOR MALLH and HARDEEP KUMAR, as and for their Complaint against Defendants FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX CORPORATION, CREDIT TO GET IT INC., TAMEKA Y. JONES also known as TAMEKA JONES NEVILLE, QUICKSILVER PARCEL SERVICE INC., JOHN M. JEANMARIE, TWO FAR GLOBAL INC., HOLGER FARIAS, and JOHN DOES 1–10, by their attorney, Ira S. Newman, allege as follows:

## TABLE OF CONTENTS

　　　　　　　　　　　　　　　　　　　　　　　　　　　Page

Nature of This Action ....................................................................................................2

Jurisdiction and Venue...................................................................................................4

The Parties .....................................................................................................................4

Plaintiff Hardeep Kumar's Employment .....................................................................10

Plaintiff Victor Mallh's Employment ..........................................................................13

Plaintiffs' Work as Fedex Drivers and Drivers' Helpers............................................16

Joint Employer Liability Under the FLSA and NYLL ....................................................19

The Woodside Contractors' Actions as Joint Employers ..................................................21

The Woodside Contractors' Principals' Actions as Joint Employers ...............................23

Fedex's Actions as Joint Employer...................................................................................25

Defendants' Collective Operation of the Woodside Enterprise and Collective
Supervision of Plaintiffs' Work .......................................................................................26

Collective Action Allegations...........................................................................................30

Class Action Allegations...................................................................................................31

First Claim (Failure To Pay Overtime – FLSA Violation)...............................................34

Second Claim (Failure To Pay Overtime – NYLL Violation)..........................................35

Third Claim (Failure To Pay Spread of Hours Pay – NYLL Violation) ..........................37

## NATURE OF THIS ACTION

1.      Plaintiffs bring this action seeking monetary damages based upon

Defendants' violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.

§§ 201 et seq. (hereinafter the "**FLSA**"); the New York Labor Law §§ 190 et seq., 650 et

seq. (the "**NYLL**"); the New York Department of Labor Regulations, 12 N.Y.C.R.R.

§ 142-2.2; and other applicable rules, regulations, statutes, and ordinances.

2.      Plaintiffs allege, pursuant to the FLSA, that they are entitled to recover

from Defendants for themselves, and on behalf of all similarly situated employees:

(a) statutory overtime for all hours worked in excess of forty hours per week;

(b) liquidated damages in an equal amount; and (c) their reasonable attorney fees and

costs of litigation.

3.      Plaintiffs allege, pursuant to the NYLL, that they are entitled to recover

from Defendants for themselves, and on behalf of all similarly situated employees:

(a) statutory overtime for all hours worked in excess of forty hours per week; (b) "spread

of hours" pay for each day worked in excess of ten hours per day and each day worked in "split shifts"; (c) liquidated damages; (d) prejudgment interest; and (e) their reasonable attorney fees and costs of litigation.

4.     Plaintiffs have initiated this action as a collective action, seeking for themselves and on behalf of all similarly situated employees all the relief to which they are entitled.

5.     Upon information and belief, Defendant FedEx Ground Package System, Inc., including a division thereof known as FedEx Home Delivery, and together with its parent corporation Defendant FedEx Corporation (together, "**FedEx**") has instituted a carefully calculated system of employing small companies to supply couriers, also known as drivers and drivers' helpers, to work out of FedEx's package shipping terminals to deliver FedEx packages.

6.     Upon information and belief, FedEx developed this system of delivery chiefly in an attempt to avoid liability to its drivers and drivers' helpers for labor law violations and personal injuries.  Upon information and belief, FedEx has modified the structure of this system over the past years in response to liability that courts have imposed upon FedEx in litigation waged by FedEx drivers and drivers' helpers throughout the United States.  In that earlier (and still ongoing) wave of litigation, FedEx was named as a defendant by drivers with whom it had entered directly into contractual relationships.

7.     In the current system of delivery, FedEx enters directly into contracts only with the small companies which provide drivers and drivers' helpers.

8.      Upon information and belief, FedEx erroneously believes that it can avoid liability through this structure and that none of the drivers or drivers' helpers will be able to show that they were direct employees of FedEx.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the claims brought in this action pursuant to 28 U.S.C. §§ 1331 and 1367.

10.     This action is properly brought in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2), because the unlawful employment practices alleged herein were committed within the County of Queens in the State of New York.

## THE PARTIES

11.     Plaintiff Hardeep Kumar currently resides in the State of New York, County of Queens, and at all times relevant to this action was employed as a FedEx driver or drivers' helper delivering FedEx packages.

12.     Plaintiff Victor Mallh resides in the State of New York, County of Queens, and at all times relevant to this action was employed as a FedEx driver or drivers' helper delivering FedEx packages.

13.     Defendant FedEx Ground Package System, Inc, including, upon information and belief, a division thereof known as FedEx Home Delivery ("**FedEx Ground**"), is a Delaware corporation registered to do business as a foreign corporation in the State of New York.  FedEx Ground provides courier services, including package pickup and delivery services throughout the United States.

14.     Upon information and belief, FedEx Ground has many places of business located in the State of New York.  FedEx Ground is the operator and, upon information

4

and belief, the owner or lessor of two large package shipping and distribution facilities located at 24-25 Brooklyn Queens Expressway West, Woodside, Queens County, New York (the "**Woodside Terminal**") and 58-95 Maurice Avenue, Maspeth, Queens County, New York (the "**Maspeth Terminal**") where the Plaintiffs were employed at all times relevant to this action.  FedEx Ground hired Plaintiffs and directed Plaintiffs' work throughout their employment as FedEx drivers and drivers' helpers.

15.     Defendant FedEx Corporation is a Delaware corporation registered to do business as a foreign corporation in the State of New York.  Its principal place of business is located in Memphis, Tennessee.  FedEx Corporation is the parent corporation of Defendant FedEx Ground.

16.     Upon information and belief, FedEx Ground contracts with small companies (the "**Woodside Contractors**") to provide drivers and drivers' helpers to deliver FedEx packages out of the Woodside Terminal.  Upon information and belief, the Woodside Contractors number between 10 and 25.  The Woodside Contractors include Defendants Credit To Get It Inc., Quicksilver Parcel Service Inc., and Two Far Global Inc. (each a "**Contractor Defendant**"), as well as other small companies which may be named as defendants hereafter as part of a collective action herein.

17.     Defendant Credit To Get It Inc. ("**CTGI**") is an active domestic corporation duly incorporated in the State of New York, having a principal place of business located at 73 Patton Drive, Yonkers, New York.  CTGI provides FedEx drivers and drivers' helpers to deliver FedEx packages on one or more established routes out of the Woodside Terminal.  CTGI directly employed Plaintiffs as FedEx drivers and/or drivers' helpers in 2013 and 2014.

5

18.     Upon information and belief, Defendant Tameka Y. Jones also known as Tameka Jones Neville ("**Jones**") is the principal of CTGI and resides at 73 Patton Drive, Yonkers, New York.  She directed Plaintiffs' work as FedEx drivers or drivers' helpers during their employment by CTGI, hired and fired them, and paid them their wages in part with cash payments and personal checks signed by her.

19.     Defendant Quicksilver Parcel Service Inc. ("**Quicksilver**") is an active domestic corporation duly incorporated in the State of New York, having a principal place of business located at 4625 Burling Street, Flushing, New York.  Quicksilver provides FedEx drivers and drivers' helpers to deliver FedEx packages on one or more established routes out of the Woodside Terminal.  Quicksilver directly employed Plaintiffs as FedEx drivers and/or drivers' helpers in 2013 and 2014.

20.     Upon information and belief, Defendant John M. Jeanmarie ("**Jeanmarie**") is the principal of Quicksilver and resides at 4625 Burling Street, Flushing, New York.  He hired Plaintiffs, signed their paychecks, and directed their work as FedEx drivers or drivers' helpers during their employment by Quicksilver.  He paid Plaintiffs their wages in part with cash payments.

21.     Defendant Two Far Global Inc. (hereinafter "**Two Far**") is an active domestic corporation duly incorporated in the State of New York, having a principal place of business located at 63-11 Eliot Avenue, Middle Village, New York.  Two Far provides FedEx drivers and drivers' helpers to deliver FedEx packages on one or more established routes out of the Woodside Terminal.  Two Far directly employed Plaintiff Kumar as a FedEx driver and/or drivers' helper in 2013.

6

22.     Upon information and belief, Defendant Holger Farias ("**Farias**") is the principal of Two Far and resides at 63-11 Eliot Avenue, Middle Village, New York.  He directed Kumar's work as a FedEx driver or drivers' helper during Kumar's employment by Two Far, and paid all of Kumar's wages with cash payments or non-payroll checks.

23.     At all times relevant to the Complaint, Plaintiffs were "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e), and NYLL §§ 190(2) and 651(5).

24.     Upon information and belief, and as further alleged below, all of the named Defendants satisfy the standards to be held jointly and severally liable as joint "employers" of Plaintiffs under the FLSA, as those standards have been articulated by the federal courts, and under the NYLL, whose standards mirror those of the FLSA in this regard and with respect to all other substantive issues raised by the causes of action alleged herein.

25.     In addition, upon information and belief, FedEx and the Woodside Contractors have formed a single integrated enterprise (the "**Woodside Enterprise**") for the purpose of delivering FedEx packages out of the Woodside Terminal.

26.     During the peak holiday season from Thanksgiving to New Year's Day, the Woodside Enterprise delivers FedEx packages out of both the Woodside Terminal and the Maspeth Terminal because of the heavy volume of packages during the peak season.  Upon information and belief, FedEx made the Maspeth Terminal available to the Woodside Enterprise during the peak season of 2013 after transferring the operations formerly conducted out of the Maspeth Terminal to a new Long Island City facility in or around 2013; the Maspeth Terminal is shuttered during the remainder of the year when it is not being used by the Woodside Enterprise during the peak season.

27.     Upon information and belief, and as further alleged below, the Woodside Enterprise has (a) unified, interrelated operations; (b) centralized control of labor relations; and (c) common management and centralized control of all units of the Woodside Enterprise.

28.     Upon information and belief, and as further alleged below, the Woodside Enterprise is an "enterprise engaged in commerce" within the meaning of the FLSA, 29 U.S.C. §§ 203(r)(1) and (s)(1)(A), and within the meaning of the NYLL, inasmuch as FedEx and the Woodside Contractors:

(a)     perform activities for a common business purpose, to deliver and ship FedEx packages;

(b)     have employees, namely drivers and drivers' helpers, including Plaintiffs, who are engaged in commerce or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, specifically, pick up and deliver FedEx packages locally, receive and ship FedEx packages nationally and internationally, and perform tracking and paperwork necessary thereto; and

(c)     have an annual gross volume of business done of not less than $500,000 in the ownership and operation of the Woodside Enterprise.

29.     Upon information and belief, ownership and financial control of the Woodside Enterprise remain exclusively with FedEx.

30.     Upon information and belief, the John Doe Defendants alleged herein may include, without limitation:

(a)      Woodside Contractors other than the Contractor Defendants named in this Complaint which have directly employed drivers and drivers' helpers similarly situated to the named Plaintiffs and have participated in the illegal practices complained of in this action;

(b)      principals or officers of Woodside Contractors other than the individual Defendants Jones, Jeanmarie, and Farias who have participated in the illegal practices complained of in this action against drivers and drivers' helpers similarly situated to the named Plaintiffs directly employed by said Woodside Contractors;

(c)      corporate entities associated with FedEx which exercise actual or functional control over the Woodside Enterprise and/or the employment conditions as relevant herein of the named Plaintiffs and drivers and drivers' helpers similarly situated to the named Plaintiffs such that said corporate entities qualify as joint employers; and

(d)      principals, officers, or managers of FedEx Ground, FedEx Corporation, or other corporate entities which may hereinafter be named who have exercised actual or functional control over the Woodside Enterprise and/or the employment conditions as relevant herein of the named Plaintiffs and drivers and drivers' helpers similarly situated to the named Plaintiffs such that said principals, officers, or managers qualify as joint employers.

## PLAINTIFF HARDEEP KUMAR'S EMPLOYMENT

31.     Plaintiffs repeat and re-allege the allegations made hereinbefore.

32.     In or about May 2013 Plaintiff Kumar learned from one of the principals of a Woodside Contractor not named in this Complaint that FedEx was hiring drivers at the Woodside Terminal.  Kumar was directed to go to the personnel office at the Woodside Terminal, where he completed an application to become a FedEx driver and handed it in to the FedEx employee who manned the personnel office.  The application form bore the corporate name and logo of FedEx at the top.  Together with the application, Kumar filled out an IRS Form W-4.  At the direction of the FedEx personnel office employee, Kumar left the name of the employer blank on the Form W-4.  Kumar also signed an authorization for a background check.  The FedEx employee took Kumar's photograph to use for Kumar's identification badge.

33.     A short time thereafter, a FedEx employee in the personnel office of the Woodside Terminal telephoned Kumar to say that Kumar's application was approved and Kumar would be placed on the list of eligible FedEx drivers and drivers' helpers for the Woodside Terminal.  Placement on that list made Kumar immediately eligible for employment as a FedEx driver or drivers' helper by any and all of the Woodside Contractors.

34.     Kumar was given a FedEx photo identification badge and a FedEx uniform.

35.     Kumar received training from both FedEx employees and Defendants Jones, Jeanmarie, and Farias.

36.     From approximately June 11, 2013 through February 26, 2014, Kumar was regularly employed as a FedEx driver or drivers' helper by eight of the Woodside

Contractors, including all three Contractor Defendants named in this Complaint – that is, Defendants Quicksilver, CTGI, and Two Far.  Kumar typically worked five days each week, with Sunday and Monday off.  He typically began work in the Woodside Terminal at approximately 6:30 a.m. and finished work at the Woodside Terminal in the evening between 5:00 p.m. and 9:30 p.m.  He typically took no break for lunch, except for an occasional 15-minute break.  He regularly worked substantially in excess of 40 hours per week.

37.    During the peak season from Thanksgiving through New Year's Day, Kumar worked six days each week, with only Sunday off, delivering packages out of both the Woodside Terminal and the Maspeth Terminal.  Furthermore, all of Kumar's six weekly workdays were longer during peak season, beginning at approximately 7:30 a.m. and finishing between 8:30 p.m. and 10:00 p.m.  During these weeks Kumar worked greatly in excess of 40 hours per week.

38.    **Kumar's Work for Quicksilver.**  When Kumar worked as a drivers' helper for Quicksilver, he was compensated at $80.00 per day.  When he worked as a driver for Quicksilver, he was compensated at $100.00 per day.  The pay rate never took into account the number of hours worked.  Kumar was generally paid at the end of each week.  Jeanmarie generally paid Kumar his wages with a company payroll check, but on occasion Jeanmarie paid Kumar his wages partly in cash and partly with a company payroll check, with tax withholdings on the amount paid.  Kumar received a Form W-2 for 2013 that reflected the tax withholdings on the amounts paid to him with a company payroll check.  Upon information and belief, the remaining amounts that Kumar was paid

by Jeanmarie or by Quicksilver on a "cash" basis were not reported to the taxing authorities as wages.

39.     **Kumar's Work for CTGI.**  Kumar worked as a driver for CTGI and was compensated at $140.00 per day.  The pay rate never took into account the number of hours worked.  From the beginning of his employment by CTGI until approximately the end of January 2014, Jones paid Kumar for his work for CTGI entirely in cash. Beginning at approximately the end of January 2014, Jones paid him partly in cash; partly by personal check drawn on her own personal checking account; and partly by payroll check with taxes withheld on the amount paid.  Jones explained to Kumar that she was making this change because another unidentified Woodside Contractor had gotten in trouble with FedEx for paying drivers and drivers' helpers entirely in cash.  Kumar did not receive a Form W-2 for 2013, and no taxes were withheld from his 2013 wages. Upon information and belief, none of Kumar's 2013 wages were reported to the taxing authorities.

40.     **Kumar's Work for Two Far.**  When Kumar worked as a driver for Two Far, he was compensated $120 per day.  When Kumar worked as a drivers' helper for Two Far, his compensation varied from $80 to $90 per day.  Kumar was paid in cash or by company check made payable to "Cash" or to Kumar but with no payroll taxes withheld.  Kumar did not receive a Form W-2 from Two Far, and upon information and belief no taxes were withheld from his wages.

41.     On or about February 26, 2014, Kumar was terminated by FedEx from his eligibility to work as a FedEx driver or drivers' helper out of the Woodside Terminal. Because of a snowstorm and a flat tire on the truck, Kumar and his helper Plaintiff Mallh

were unable to complete their deliveries and returned to the Woodside Terminal in the evening with a heavily loaded truck.  Jones told Plaintiffs that under no circumstances could they return an undelivered load.  Jones complained to FedEx.  As a result of her complaint, a FedEx employee identified as "Ozier" disciplined Plaintiffs, removed Plaintiffs from the eligibility list of approved drivers and drivers' helpers, and informed the Woodside Contractors that they could no longer employ Plaintiffs as drivers or drivers' helpers.

## PLAINTIFF VICTOR MALLH'S EMPLOYMENT

42.     Plaintiffs repeat and re-allege the allegations made hereinbefore.

43.     In or about October 2013 Plaintiff Mallh learned from Defendant Jeanmarie that FedEx was hiring drivers at the Woodside Terminal.  As directed by Jeanmarie, Mallh went to the personnel office at the Woodside Terminal, completed an application to become a FedEx driver, and handed it in to the FedEx employee who manned the personnel office.  The application form bore the corporate name and logo of FedEx at the top.  Together with the application, Mallh filled out an IRS Form W-4.  At the direction of the FedEx personnel office employee, Mallh left the name of the employer blank on the Form W-4.  Mallh also signed an authorization for a background check.  The FedEx employee took Mallh's photograph to use for Mallh's identification badge.

44.     A short time thereafter, a FedEx employee in the personnel office of the Woodside Terminal telephoned Mallh and Jeanmarie to say that Mallh's application was approved and Mallh would be placed on the list of eligible FedEx drivers and drivers' helpers for the Woodside Terminal.  Placement on that list made Mallh immediately

eligible for employment as a FedEx driver or drivers' helper by any of the Woodside Contractors.

45.     Mallh was given a FedEx photo identification badge and a FedEx uniform.

46.     Mallh received training from both FedEx employees and Defendants Jones and Jeanmarie.

47.     From approximately November 6, 2013 through approximately February 26, 2014, Mallh was regularly employed as a FedEx driver or drivers' helper by Defendant Quicksilver or by Defendant CTGI.  Mallh typically worked five days each week, with Sunday and Monday off.  He typically began work in the Woodside Terminal at approximately 6:30 a.m. and finished work at the Woodside Terminal in the evening between 5:00 p.m. and 9:30 p.m.  He typically took no break for lunch, except for an occasional 15-minute break.  He regularly worked substantially in excess of 40 hours per week.

48.     During the peak season from Thanksgiving through New Year's Day, Mallh worked six days each week, with only Sunday off, delivering packages out of both the Woodside Terminal and the Maspeth Terminal.  Furthermore, all of Mallh's six weekly workdays were longer during peak season, beginning at approximately 7:30 a.m. and finishing between 8:30 p.m. and 10:00 p.m.  During these weeks Mallh worked greatly in excess of 40 hours per week.

49.     **Mallh's Work for Quicksilver.**  Mallh worked for Quicksilver principally as a driver.  For his work for Quicksilver, Mallh was compensated at rates that increased over time from $90.00 to $120.00 per day.  The pay rate never took into account the number of hours worked.  For his first week of work for Quicksilver, Mallh

was paid all his wages on a company payroll check, with the appropriate tax withholdings.  After his first week of work, Jeanmarie paid Mallh one-half his wages with a company payroll check, with tax withholdings on the amount paid, and one-half with another check that was typically made payable to "Cash" or to Mallh.  Mallh received a Form W-2 for 2013 that reflected the tax withholdings on the amounts paid to him with a company payroll check.  Upon information and belief, the remaining amounts that Mallh was paid by Jeanmarie or by Quicksilver on a "cash" basis were not reported to the taxing authorities as wages.

50. **Mallh's Work for CTGI.**  Mallh worked for CTGI as a drivers' helper and was compensated at rates that varied from $80.00 to $100.00 per day.  Mallh was generally paid at the end of each week.  The pay rate was arbitrary; it did not consistently increase over time.  The pay rate never took into account the number of hours worked.  From the beginning of his employment by CTGI until approximately the end of January 2014, Jones paid Mallh for his work for CTGI entirely in cash.  Beginning at approximately the end of January 2014, Jones paid him partly in cash; partly by personal check drawn on her own personal checking account; and partly by payroll check with taxes withheld on the amount paid.  Jones explained to Mallh that she was making this change because another unidentified Woodside Contractor had gotten in trouble with FedEx for paying drivers and drivers' helpers entirely in cash.  Mallh did not receive a Form W-2 for 2013, and no taxes were withheld from his 2013 wages.  Upon information and belief, none of Mallh's 2013 wages were reported to the taxing authorities.

51. On or about February 26, 2014, Mallh was terminated by FedEx from his eligibility to work as a FedEx driver or drivers' helper out of the Woodside Terminal.

Because of a snowstorm and a flat tire on the truck, Mallh and his driver Plaintiff Kumar were unable to complete their deliveries and returned to the Woodside Terminal in the evening with a heavily loaded truck.  Jones told Plaintiffs that under no circumstances could they return an undelivered load.  Jones complained to FedEx.  As a result of her complaint, a FedEx employee identified as "Ozier" disciplined Plaintiffs, removed Plaintiffs from the eligibility list of approved drivers and drivers' helpers, and informed the Woodside Contractors that they could no longer employ Plaintiffs as drivers or drivers' helpers.

### PLAINTIFFS' WORK AS FEDEX DRIVERS AND DRIVERS' HELPERS

52.     Plaintiffs repeat and re-allege the allegations made hereinbefore.

53.     On work days, Plaintiffs regularly arrived to work in the Woodside Terminal at 6:30 each morning.  They passed security clearance, which upon information and belief is maintained and staffed directly by FedEx as the operator of the Woodside Terminal.

54.     On some mornings, the principal of the Woodside Contractor for which Plaintiffs were working on that day would be on hand to assist Plaintiffs with their pre-delivery morning routines.  On other mornings, no principal or employee of the Woodside Contractor was present.

55.     On all mornings except Mondays during peak season, FedEx employees were present to supervise and assist with Plaintiffs' pre-delivery morning routines.  On Mondays during peak season, one of the individual Defendants herein supervised Plaintiffs' work.

16

56.     Each regular workday morning, Plaintiffs proceeded first to the FedEx office where a FedEx employee gave them a mobile scanner to use for the day.  The mobile scanner is a computer device that records and tracks the packages to be delivered that day.

57.     Next, Plaintiffs received from a FedEx employee the packages that they were to deliver that day, and a paper route sheet indicating the location of the package recipients and giving a suggested route for delivering those packages in order of geographical location.

58.     Next, Plaintiffs located the truck that they were to drive or ride in that day.

59.     Next, Plaintiffs scanned in the packages to be delivered that day as they loaded those packages onto the truck.  This process took anywhere from one to five hours to complete, depending upon the number of packages, how smoothly the scanner was functioning, and other variables.

60.     When the truck was fully loaded and Plaintiffs were ready to leave, Plaintiffs "scanned themselves in" to work.  Plaintiffs were instructed by FedEx and the Woodside Contractors not to scan themselves in during their pre-delivery work, and were told to be careful never to remain scanned in to work for more than 70 hours in any given week.

61.     After scanning themselves in, Plaintiffs left in the truck and began their deliveries for the day.  During the day, while out on their route, Plaintiffs would stay in touch with a FedEx employee, who was often an individual identified as "Ken," and/or with the principal of the Woodside Contractor for which they were working that day.

62.     The mobile scanner transmitted information to the FedEx network that allowed the FedEx employees to track Plaintiffs' movements and progress.  The Woodside Contractors did not have direct access to the information transmitted by Plaintiffs' scanner.  Instead, the Woodside Contractors received only the information that was relayed to them by FedEx employees.

63.     While Plaintiffs were making their deliveries each day, they were contacted by telephone and text message by one or both of the FedEx employee and the principal of the Woodside Contractor for which Plaintiffs were working that day.  In these communications, Plaintiffs received instructions and tasks concerning adjustments to their route, requests for information about their deliveries, unscheduled pickups to be made, signatures needed from package recipients, complaints or concerns of package recipients to be addressed, and other dispatch needs and instructions.

64.     After the last delivery was made each day, Plaintiffs "scanned themselves out" of work.  Plaintiffs were instructed to scan themselves out before their post-delivery work, and were told to be careful never to remain scanned in to work for more than 70 hours in any given week.

65.     All necessary information was tracked by the mobile scanner, and Plaintiffs did not generally fill out paperwork pertaining to their work.  However, upon completion of their route at the end of each day, Plaintiffs returned to the Woodside Terminal, and upon passing the security clearance, Plaintiffs signed in on a paper log.

66.     Once inside the Woodside Terminal, at a spot near the security clearance, Plaintiffs were ordinarily met by a FedEx employee who scanned in all the packages remaining in Plaintiffs' truck at the end of the day.  Plaintiffs were not permitted to scan

18

the packages upon their return, and the Woodside Contractors were also not permitted to scan the packages upon Plaintiffs' return.

67.     After the returned packages were scanned in by the FedEx employee, Plaintiffs proceeded to the truck's dock and unloaded the packages from the truck.  This process typically took about one-half hour.

68.     After unloading the truck, Plaintiffs went to the FedEx office, where they handed in their scanner.  Their work was then complete for the day, and they were free to leave the Woodside Terminal.

## JOINT EMPLOYER LIABILITY UNDER THE FLSA AND NYLL

69.     Plaintiffs repeat and re-allege the allegations made hereinbefore.

70.     The FLSA defines an employer for the purpose of its provisions as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

71.     Under NYLL § 190(3), an employer "includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

72.     Courts in this jurisdiction have applied tests of "economic reality" and "functional control" of workers to determine whether a particular defendant can be held liable under the FLSA and NYLL as an employer despite the defendant's lack of formal control over the workers.

73.     The "economic reality" and "functional control" tests permit several persons or entities to be held jointly and severally liable for violations of the FLSA and NYLL as "employers" for the purpose of those statutes.  Those tests take into account

19

"the real economic relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the workers to that employer." *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 193 (S.D.N.Y. 2003).

74.     Non-dispositive factors considered by courts in analyzing the economic reality of an employment situation include whether the alleged employer (i) had the power to hire and fire the employees, (ii) supervised and controlled the employees' work schedules or conditions of employment, (iii) determined the rate and method of payment, and (iv) maintained employment records.

75.     Additional non-dispositive factors considered by courts in analyzing the functional control of an employment situation include (i) whether a defendant's premises and equipment are used for the plaintiffs' work, (ii) whether the defendants had a business that could or did shift as a unit from one putative joint employer to another, (iii) the extent to which plaintiffs performed a discrete line-job that is integral to a defendant's process of production, (iv) whether responsibility under the contracts could pass from one subcontractor to another without material changes, (v) the degree to which defendants or their agents supervised the plaintiffs' work, and (vi) whether the plaintiffs worked exclusively or predominantly for the defendants.

76.     In addition, courts in this jurisdiction hold two nominally separate entities liable as a "single employer" under the FLSA and NYLL when they are part of a single integrated enterprise.  Non-dispositive factors considered by courts analyzing the existence of an integrated enterprise include (i) interrelation of operations, (ii) centralized control of labor relations, (iii) common management, and (iv) common ownership or financial control.

77.     Finally, under the FLSA and NYLL, the individual owners, officers, and directors of entity employers are personally liable jointly and severally with the entity employer which has formal control over the employees if those individuals owners', officers', and directors' role within the company, and the decisions that their role entails, directly affect the nature or conditions of the employees' employment, and if it does so to such a degree that it is logical to find those owners, officers, and directors liable to the employees.

### THE WOODSIDE CONTRACTORS' ACTIONS AS JOINT EMPLOYERS

78.     Plaintiffs repeat and re-allege the allegations made hereinbefore.

79.     At all relevant times, the Woodside Contractors, including the Contractor Defendants named in this Complaint and other Woodside Contractors which may be named hereafter as part of a collective action, qualified as employers of the named Plaintiffs and other employees similarly situated to them to the extent that each Woodside Contractor directly employed each employee, had formal control over the work the employees performed, and had formal control over the employees' employment status.

80.     The Woodside Contractors provide and maintain the FedEx trucks which the named Plaintiffs and other employees similarly situated to them drive or ride in each day while they were directly employed by the respective Woodside Contractor.

81.     Upon information and belief, each of the Woodside Contractors maintain the employment records of the named Plaintiffs and other employees similarly situated to them during the respective periods of time that each employee is in the employ of that Woodside Contractor.

82.     A number of the Woodside Contractors, including the Contractor Defendants named in this Complaint, were the named Plaintiffs' direct employers and had formal and actual control over the named Plaintiffs' work and employment status.

83.     Acting together with FedEx, Defendant CTGI hired and fired Mallh and Kumar.

84.     CTGI issued payroll checks to Mallh and Kumar for some of their wages, and withheld taxes on those wages.  CTGI paid another portion of Mallh's and Kumar's wages in cash without reporting those payments as wages and without making the employer's contributions of social security, Medicare, and unemployment insurance taxes as required by law.

85.     Acting within guidelines dictated by FedEx, CTGI determined the method of Mallh's and Kumar's compensation.  More specifically, upon information and belief, CTGI paid Mallh and Kumar all of their wages in cash from the beginning of their employment by CTGI until about January 2014 when FedEx instructed CTGI to pay some of those wages by check.

86.     Acting together with FedEx, Defendant Quicksilver hired Mallh and Kumar.

87.     Quicksilver issued payroll checks to Mallh and Kumar for some of their wages, and withheld taxes on those wages.  Quicksilver paid another portion of Mallh's and Kumar's wages in non-payroll company checks and in cash without reporting those payments as wages and without making the employer's contributions of social security, Medicare, and unemployment insurance taxes as required by law.

88.     Acting together with FedEx, Quicksilver prevented Mallh from working for CTGI during the holiday season of 2013.  More specifically, when Mallh went to work for CTGI because CTGI paid him a higher rate than Quicksilver paid him, Quicksilver complained to FedEx.  As a result of Quicksilver's complaint, FedEx told Mallh he could not work for CTGI during the holiday season of 2013 because Quicksilver was counting on his services.

89.     Acting within guidelines dictated by FedEx, Quicksilver determined the method of Mallh's and Kumar's compensation.

90.     Acting together with FedEx, Defendant Two Far hired Kumar.

91.     Two Far issued company checks to Kumar for some of his wages, and paid another portion of Kumar's wages in cash, but failed to report any of those check and cash payments as wages and make the employer's contributions of social security, Medicare, and unemployment insurance taxes as required by law.

92.     Acting within guidelines dictated by FedEx, Two Far determined the method of Kumar's compensation.

### THE WOODSIDE CONTRACTORS' PRINCIPALS' ACTIONS AS JOINT EMPLOYERS

93.     Plaintiffs repeat and re-allege the allegations made hereinbefore.

94.     At all relevant times, upon information and belief, the principals of the Woodside Contractors named in this Complaint, and other principals of Woodside Contractors who may be named hereafter as part of a collective action, qualified as employers of the named Plaintiffs and other employees similarly situated to them to the extent that the principals' role within the respective company, and the decisions that their role entailed, directly affected the nature or conditions of the employees' employment,

and it did so to such a degree that it is logical to find those owners, officers, and directors liable to the employees.

95.    A number of principals of Woodside Contractors, including Defendants Jones, Jeanmarie, and Farias, had actual control over the named Plaintiffs' work and employment status.

96.    On behalf of CTGI, and acting together with FedEx, Jones hired and fired Mallh and Kumar.

97.    Jones paid a portion of Mallh's and Kumar's wages in cash without reporting those payments as wages and without making the employer's contributions of social security, Medicare, and unemployment insurance taxes as required by law.

98.    On behalf of CTGI, and acting within guidelines dictated by FedEx, Jones determined the method of Mallh's and Kumar's compensation.  More specifically, upon information and belief, Jones paid Mallh and Kumar all of their wages in cash from the beginning of their employment by CTGI until about January 2014 when FedEx instructed her to pay some of those wages by check.

99.    On behalf of Quicksilver, and acting together with FedEx, Farias hired Mallh and Kumar.

100.    Farias paid a portion of Mallh's and Kumar's wages in non-payroll company checks and in cash without reporting those payments as wages and without making the employer's contributions of social security, Medicare, and unemployment insurance taxes as required by law.

101.    Jeanmarie prevented Mallh from working for CTGI during the holiday season of 2013.  More specifically, when Mallh went to work for CTGI because CTGI

paid him a higher rate than Quicksilver paid him, Jeanmarie complained to FedEx.  As a result of Jeanmarie's complaint, FedEx told Mallh he could not work for CTGI during the holiday season of 2013 because Quicksilver was counting on his services.

102.     On behalf of Quicksilver, and acting within guidelines dictated by FedEx, Jeanmarie determined the method of Mallh's and Kumar's compensation.

103.     On behalf of Two Far, and acting together with FedEx, Farias hired Kumar.

104.     Farias paid a portion of Kumar's wages in cash, but failed to report any of those check and cash payments as wages and make the employer's contributions of social security, Medicare, and unemployment insurance taxes as required by law.

105.     On behalf of Two Far, and acting within guidelines dictated by FedEx, Farias determined the method of Kumar's compensation.

### FEDEX'S ACTIONS AS JOINT EMPLOYER

106.     Plaintiffs repeat and re-allege the allegations made hereinbefore.

107.     At all relevant times, FedEx qualified as an employer of its drivers and drivers' helpers, including the named Plaintiffs and other employees similarly situated to them, even though FedEx is not their direct employer.

108.     Plaintiffs applied directly to FedEx, and to no one else, for employment as FedEx drivers.  FedEx alone received, processed, and approved Plaintiffs' applications for employment.  As part of this process, FedEx alone conducted background checks on Plaintiffs, which Plaintiffs authorized.

109.     Upon information and belief, FedEx maintains the employment records of all of the named Plaintiffs and other employees similarly situated to them for all of the

25

time that they are employed as drivers and drivers' helpers working out of the Woodside Terminal.

110.    At all relevant times, upon information and belief, FedEx alone provided the premises at the Woodside Terminal in which Plaintiffs work.

111.    Upon information and belief, FedEx determines the "bottom line" requirements for the method of compensating Plaintiffs and directs the Woodside Contractors to follow its guidelines.

112.    The Woodside Contractors regularly refer Plaintiffs to FedEx when the Woodside Contractors wish to discipline Plaintiffs.  Upon information and belief, FedEx alone has the power to discipline Plaintiffs.

113.    FedEx fired Plaintiffs Mallh and Kumar after Jones complained that on or about February 26, 2014, Mallh and Kumar returned a truck to the Woodside Terminal without delivering their load of packages.  A FedEx employee identified as "Ozier" removed Plaintiffs from the eligibility list of approved drivers and drivers' helpers, and informed the Woodside Contractors that Plaintiffs could no longer be employed as drivers or drivers' helpers.

### DEFENDANTS' COLLECTIVE OPERATION OF THE WOODSIDE ENTERPRISE AND COLLECTIVE SUPERVISION OF PLAINTIFFS' WORK

114.    Plaintiffs repeat and re-allege the allegations made hereinbefore.

115.    Upon information and belief, FedEx actively controls all operations in and out of the Woodside Terminal, including the work of the named Plaintiffs and all other drivers and drivers' helpers employed to deliver FedEx packages.

116.    Upon information and belief, the Woodside Contractors provide drivers and drivers' helpers to deliver FedEx packages under individual contracts with FedEx.

117.    The Woodside Contractors are the direct employers of drivers and drivers' helpers and exercise active control over the work of those employees during the times that those employees are in their payroll, including Plaintiffs.  The Woodside Contractors exercise formal control over their employees' rates and method of pay.  In addition, the Woodside Contractors are directly involved in assigning to their employees their daily tasks, in directing their execution of those tasks, and in communicating with them about their progress on those tasks during the day.

118.    Furthermore, upon information and belief, the Woodside Contractors are formally responsible for the ownership, maintenance, and operation of the FedEx trucks driven by FedEx drivers.

119.    Nevertheless, upon information and belief, much of the Woodside Contractors' formal power is illusory because FedEx restricts the Woodside Contractors' exercise of power to a few areas and within strict guidelines of what FedEx will permit.

120.    Moreover, FedEx at all times maintains an active and direct involvement in the most critical aspects of the work of FedEx drivers and drivers' helpers, including Plaintiffs.

121.    Upon information and belief, FedEx has sole power to hire and fire the drivers and drivers' helpers, to determine the acceptable methods of their pay, to establish and enforce standards of conduct in the performance of their duties, to assign to them their daily tasks, to direct their execution of those tasks, to discipline them for alleged misconduct or insensitive service to customers and package recipients, to equip them

27

with FedEx uniforms, to direct the loading of the delivery trucks with FedEx packages for delivery by the drivers and drivers' helpers at the beginning of the day, and to unload the delivery trucks at the end of the day.

122.    FedEx exercises its control in the areas mentioned in the preceding paragraph both directly, by communicating its decisions and directions to the drivers and drivers' helpers, including Plaintiffs, through FedEx employees; and indirectly, by relaying its decisions and directions to the drivers and drivers' helpers, including Plaintiffs, through one or more of the Woodside Contractors.

123.    In this regard, the Woodside Contractors act as executors of FedEx's decisions, and sometimes act as little more than passive conduits for communicating FedEx's decisions and directions to the drivers and drivers' helpers, including Plaintiffs.

124.    Furthermore, upon information and belief, FedEx has sole authority to approve, set performance standards for, inspect, and maintain the trucks driven by the drivers; to authorize, require, and enforce the use of the FedEx logo on those trucks; and to respond to complaints from customers and package recipients about the drivers' and drivers' helpers', including Plaintiffs', performance of their duties in delivering FedEx packages.

125.    In addition, upon information and belief, FedEx is the sole operator of the Woodside Terminal and is the sole provider of the premises where the drivers and drivers' helpers, including Plaintiffs, work.

126.    Upon information and belief, drivers and drivers' helpers, including Plaintiffs, can work for any one of the Woodside Contractors, as long as FedEx approves.

127.    Upon information and belief, each of the Woodside Contractors covers its own established routes.  However, FedEx maintains ultimate control over all the routes covered.

128.    Upon information and belief, on the frequent occasions when a Woodside Contractor is unexpectedly unable to provide the drivers and drivers' helpers needed to cover a particular route and truck on a certain day, FedEx assigns FedEx employees to cover that route and truck.  These FedEx employees are considered "temporary" or "fill-in" drivers and drivers' helpers not directly employed by any Woodside Contractor.

129.    FedEx enforces its "brand" by regulating the uniform of FedEx drivers and drivers' helpers, as well as the carrying of a FedEx logo on all delivery trucks.  In other words, FedEx holds itself out to the public as the employer of its drivers and drivers' helpers, including Plaintiffs.

130.    FedEx alone sets and enforces the standards for the delivery of packages by the drivers and drivers' helpers, including Plaintiffs.  FedEx provides the scanning devices used by the drivers and drivers' helpers, and FedEx alone has access to the electronic data that those scanning devices collect.  Only a FedEx employee is permitted to scan in the packages returned to the Woodside Terminal at the end of each day.

131.    In this way, FedEx maintains ultimate control over all operations at the Woodside Terminal.

## COLLECTIVE ACTION ALLEGATIONS

132. Plaintiffs repeat and re-allege the allegations made hereinbefore.

133. Apart from the grounds for relief alleged in this Complaint by the named Plaintiffs, this action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b).

134. The Plaintiffs named in this Complaint (the "**named Plaintiffs**") seek to proceed in this action on their own behalf and on behalf of other employees (the "**Collective Action Employees**") who, upon information and belief, are similarly situated to the named Plaintiffs, as set forth in the following paragraphs.

135. Upon information and belief, Collective Action Employees who are eligible to participate in the claims brought under the FLSA in this action presently work for Defendants or worked for Defendants at some time in the preceding three years.

136. The named Plaintiffs and, upon information and belief, the Collective Action Employees are drivers and drivers' helpers employed by FedEx and one or more of the Woodside Contractors as part of the Woodside Enterprise. They work out of the Woodside Terminal to deliver FedEx packages on the delivery routes covered by the Woodside Contractors.

137. At all times relevant to this Complaint, the named Plaintiffs and, upon information and belief, the Collective Action Employees worked full time or more than full time.

138. At all times relevant to this Complaint, Defendants regularly failed to pay overtime wages to the named Plaintiffs and, upon information and belief, the Collective Action Employees in conformity with the FLSA for their hours worked over 40 hours per week.

139.    At all times relevant to this Complaint, Defendants compensated the named Plaintiffs and, upon information and belief, the Collective Action Employees partly on the books through payroll checks and partly off the books through cash and other non-reported payments.

140.    At all times relevant to this Complaint, Defendants failed to make their required contributions of social security, Medicare, and unemployment taxes on behalf of the named Plaintiffs and, upon information and belief, on behalf of the Collective Action Employees, and to withhold and remit taxes on their full earnings, and to make workers' compensation payments on those earnings, thus depriving them of governmental benefits to which they were entitled.

## CLASS ACTION ALLEGATIONS

141.    Plaintiffs repeat and re-allege the allegations made hereinbefore.

142.    Apart from the grounds for relief alleged in this Complaint by the named Plaintiffs on their own behalf and on behalf of the Collective Action Employees, this action is properly maintainable as a class action pursuant to New York Civil Practice Law and Rules, Article 9.

143.    The named Plaintiffs seek to proceed in this action on their own behalf and on behalf of other employees (the "**Class Action Employees**") who, upon information and belief, are similarly situated to the named Plaintiffs and the Collective Action Employees, as set forth in the following paragraphs.

144.    Upon information and belief, Class Action Employees whose rights may be affected by the claims brought under the NYLL in this action presently work for Defendants or worked for Defendants at some time in the preceding six years.

31

145.    The named Plaintiffs and, upon information and belief, the Collective Action Employees are drivers and drivers' helpers employed by FedEx and one or more of the Woodside Contractors as part of the Woodside Enterprise.  They work out of the Woodside Terminal to deliver FedEx packages on the delivery routes covered by the Woodside Contractors.

146.    At all times relevant to this Complaint, the named Plaintiffs and, upon information and belief, the Class Action Employees worked full time or more than full time.

147.    Upon information and belief, the Class Action Employees are so numerous that joinder of all members of the alleged class is impracticable.

148.    Upon information and belief, the named Plaintiffs and the Class Action Employees have questions of law and fact in common pertaining to the methods employed by Defendants to compensate them for their work.  These questions predominate over any questions affecting only individual members of the alleged class.

149.    Given the size of the alleged class and the predominance of questions in common, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

150.    Upon information and belief, the claims of the named Plaintiffs are typical of the claims of the Class Action Employees, because, upon information and belief, Defendants used the same methods to compensate all FedEx drivers and drivers' helpers working out of the Woodside Terminal.

151.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the common issues of fact and law predominate over questions affecting individual members.

152.    The named Plaintiffs are adequate representatives of the Class Action Employees.  Plaintiff Mallh was directly employed by two of the Woodside Contractors over a period of more than three months.  Plaintiff Kumar was directly employed by eight of the Woodside Contractors over a period of more than eight months.

153.    At all times relevant to this Complaint, Defendants regularly failed to pay overtime wages to the named Plaintiffs and, upon information and belief, the Class Action Employees in conformity with the NYLL for their hours worked over 40 hours per week.

154.    At all times relevant to this Complaint, Defendants failed to pay spread of hours pay to the named Plaintiffs and, upon information and belief, the Class Action Employees in conformity with the NYLL for their hours worked over 10 hours or in split shifts in a day.

155.    At all times relevant to this Complaint, Defendants compensated the named Plaintiffs and, upon information and belief, the Class Action Employees partly on the books through payroll checks and partly off the books in cash payments.

156.    At all times relevant to this Complaint, Defendants failed to make their required contributions of social security, Medicare, and unemployment taxes on behalf of the named Plaintiffs and, upon information and belief, on behalf of the Class Action Employees, and to withhold and remit taxes on their full earnings, and to make workers'

compensation payments on those earnings, thus depriving them of governmental benefits to which they were entitled.

## FIRST CLAIM
### (Failure To Pay Overtime – FLSA Violation)

157.    Plaintiffs repeat and re-allege the allegations made hereinbefore.

158.    Defendants are employers within the meaning of 29 U.S.C. § 203(d).

159.    Pursuant to 29 U.S.C. § 207(a)(2), "[n]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

160.    The named Plaintiffs and, upon information and belief, the Collective Action Employees regularly worked between 41 and 75 hours per week, averaging approximately 52 hours per week.

161.    The named Plaintiffs and, upon information and belief, the Collective Action Employees did not receive overtime compensation at the rate of one and one-half times their regular rates of pay.

162.    Defendants underreported the named Plaintiffs' and, upon information and belief, the Collective Action Employees' actual rates of pay.  Consequently, Defendants' records of payment of wages are incomplete and must be disregarded.

163.    Defendants willfully failed to pay overtime compensation in violation of the FLSA.

164.    Upon information and belief, Defendants' failure to pay overtime compensation was part of a scheme to defraud the federal taxing authority and to deprive the named Plaintiffs and, upon information and belief, the Collective Action Employees of the compensation to which they were entitled pursuant to the FLSA.

165.    Defendants are therefore liable to the named Plaintiffs and, upon information and belief, the Collective Action Employees for unpaid overtime compensation in an amount to be determined at trial, plus liquidated damages in an equal amount, plus their reasonable attorney fees and litigation costs.

## SECOND CLAIM
### (Failure To Pay Overtime – NYLL Violation)

166.    Plaintiffs repeat and re-allege the allegations made hereinbefore.

167.    Defendants are employers within the meaning of NYLL §§ 190(3) and 651(6).

168.    Pursuant to the New York Department of Labor regulations, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in . . . [the FLSA] . . . ."  12 N.Y.C.C.R. § 142-2.2.

169.    In 2010 the legislature explicitly incorporated the Department of Labor regulations into the NYLL.  *See* NYLL § 2(16) [second provision] ("All references to labor law, chapter, article or section shall be deemed to include any rule, regulation or order promulgated thereunder or related thereto.").

170.    NYLL § 663, as amended in 2010, provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such

underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due."

171.     The named Plaintiffs and, upon information and belief, the Class Action Employees regularly worked in excess of 40 hours per week.

172.     The named Plaintiffs and, upon information and belief, the Class Action Employees did not receive overtime compensation at the rate of one and one-half times their regular rates of pay.

173.     Defendants underreported the named Plaintiffs and, upon information and belief, the Class Action Employees' actual rate of pay.  Consequently, Defendants' records of payment of wages are incomplete and must be disregarded.

174.     Defendants failed to pay overtime compensation in violation of the NYLL and the Department of Labor regulations incorporated therein.

175.     Upon information and belief, Defendants' failure to pay overtime compensation was willful and was part of a scheme to defraud the federal and state taxing authorities and to deprive the named Plaintiffs and, upon information and belief, the Class Action Employees of the compensation to which they were entitled pursuant to the NYLL and the Department of Labor regulations incorporated therein.

176.     Defendants are therefore liable to the named Plaintiffs and, upon information and belief, to the Class Action Employees for unpaid overtime compensation

in an amount to be determined at trial, plus liquidated damages allowed by the NYLL,

statutory prejudgment interest, and their reasonable attorney fees and litigation costs.

### THIRD CLAIM
### (Failure To Pay Spread of Hours Pay – NYLL Violation)

177.    Plaintiffs repeat and re-allege the allegations made hereinbefore.

178.    Pursuant to the New York Department of Labor regulations "[a]n

employee shall receive one hour's pay at the basic minimum hourly wage rate . . . for any

day in which:  (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c)

both situations occur."  12 N.Y.C.C.R. § 142-2.4.

179.    In 2010 the legislature explicitly incorporated the Department of Labor

regulations into the NYLL.  *See* NYLL § 2(16) [second provision] ("All references to

labor law, chapter, article or section shall be deemed to include any rule, regulation or

order promulgated thereunder or related thereto.").

180.    The named Plaintiffs and, upon information and belief, the Class Action

Employees on occasion worked in excess of ten hours per day and/or a split shift.

181.    Defendants did not pay the named Plaintiffs and, upon information and

belief, the Collective Action Employees an additional hour's "spread of hours" pay for

days in which they worked more than ten hours and/or a split shift.

182.    Thus, Defendants failed to pay "spread of hours" pay in violation of the

NYLL and the Department of Labor regulations incorporated therein.

183.    Defendants are therefore liable to the named Plaintiffs and, upon

information and belief, the Class Action Employees for unpaid spread of hours pay in an

amount to be determined at trial, plus liquidated damages allowed by the NYLL,

statutory prejudgment interest, and their reasonable attorney fees and litigation costs.

WHEREFORE, as a result of unlawful conduct and actions of the Defendants herein alleged, Plaintiffs respectfully request that this Court enter a judgment against Defendants for the following relief on their own behalf and on behalf of all similarly situated employees:

(a)     On the First Claim for Relief, an award of Plaintiffs' actual damages for past earnings, including unpaid overtime compensation in an amount to be determined at trial;

(b)     On the Second Claim for Relief, an award of Plaintiffs' actual damages for past earnings, including unpaid overtime compensation in an amount to be determined at trial and statutory prejudgment interest;

(c)     On the Third Claim for Relief, an award of Plaintiffs' actual damages for past earnings, including unpaid spread of hours pay in an amount to be determined at trial and statutory prejudgment interest;

(d)     An award of all liquidated damages allowed by federal and New York law;

(e)     An award of all attorney fees and costs reasonably incurred by Plaintiffs in prosecuting this action;

(f)     An award of post-judgment interest; and

(g)       Such other and further relief as may be just and proper.


Dated: Great Neck, New York
      July 11, 2014

                       Respectfully submitted,


                           s/ Ira S. Newman
                            IRA S. NEWMAN
              Law Offices of Ira S. Newman
              98 Cutter Mill Road, Suite 441-South
              Great Neck, NY 11021
              (516) 487-7375
              *Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**Case No. 14 CV 4274**

---

HARDEEP KUMAR and VICTOR MALLH,
on their own behalf and for all others similarly situated,

Plaintiffs,

– against –

FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX CORPORATION,
CREDIT TO GET IT INC., TAMEKA Y. JONES also known as TAMEKA JONES NEVILLE,
QUICKSILVER PARCEL SERVICE INC., JOHN M. JEANMARIE,
TWO FAR GLOBAL INC., HOLGER FARIAS, and JOHN DOES 1–10,

Defendants.

---

**COMPLAINT**

---

THE LAW OFFICES OF IRA S. NEWMAN
Ira S. Newman, Esq.
98 Cutter Mill Road, Suite 441-South
Great Neck, New York 11021
Tel: (516) 487-7375
Fax: (516) 487-0113
*Attorneys for Plaintiffs*